# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES WARREN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-09-S-1840-NE** |
| | ) | |
| **SAMUEL LANE, and CITY OF** | ) | |
| **HUNTSVILLE, ALABAMA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff, James Warren, commenced this action against the City of Huntsville, Alabama, and Samuel Lane, a police officer for the City of Huntsville.[1]  The complaint asserts five claims against Officer Lane:  two for unlawful arrest and excessive force under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983; and, three state law claims for false imprisonment, assault and battery, and malicious prosecution.[2]  Additionally, plaintiff seeks to hold the City of Huntsville liable on his state law false imprisonment and assault and battery claims under a theory of *respondeat superior*.[3]  The case presently

---

[1] Doc. no. 1 (Complaint).

[2] *Id.* at 7-12.

[3] *Id.* at 10-12.

is before the court on motions for summary judgment filed by both defendants.[4]

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[5]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact 'exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.'"  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284-85 (11th Cir. 1997)).

"In making this determination, the court must review all evidence and make all

___

[4] Doc. no. 28 (City of Huntsville's Motion for Summary Judgment); doc. no. 29 (Lane's Motion for Summary Judgment).  The defendants submitted a joint brief in support of their motions for summary judgment.  Doc. no. 30 (Joint Brief in Support of Motions for Summary Judgment).

[5] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

Officer Lane asserts the affirmative defense of qualified immunity as an alternative ground for summary judgment on plaintiff's § 1983 claims.[6] It is important to emphasize that, when assessing such a defense, the district court must "answer the legal question of whether the defendant [is] entitled to qualified

---

[6] Brief in Support 18-24.

3

immunity under [*the plaintiff's*] version of the facts." *Thornton v. City of Macon*, 132

F.3d 1395, 1397 (11th Cir. 1998) (citing *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 &

n.3 (11th Cir. 1996)).

> Indeed, we approach the facts from the plaintiff's perspective because
> "[t]he issues . . . concern 'not which facts the parties might be able to
> prove, but, rather, whether or not certain given facts showed a violation
> of clearly established law.'" *Sheth* [*v. Webster*], 145 F.3d [1231,] 1236
> [11th Cir. 1998] (quoting *Johnson v. Jones*, 515 U.S. 304, 311, 115 S.
> Ct. 2151, 2155, 132 L. Ed. 2d 238 (1995)).  As this Court has repeatedly
> stressed, the "facts, as accepted at the summary judgment stage of the
> proceedings, may not be the actual facts of the case." *Priester v. City of
> Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).  Nevertheless,
> for summary judgment purposes, our analysis must begin with a
> description of the facts in the light most favorable to the plaintiff.  *See
> Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002).

*Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (bracketed alterations

supplied).

## II.  FACTS

Plaintiff, James Warren, left his residence on O'Shaughnessy Avenue in

Huntsville, Alabama at approximately 9:45 p.m. on October 4, 2007, with the

intention of driving to his parents' home in Harvest, Alabama.[7]  Somewhere along

that route, Madison County Deputy Sheriff Rick Brown initiated a traffic stop for

reckless driving by falling in behind Warren's vehicle and activating his cruiser's

---

[7] Doc. no. 31, Ex. A (Deposition of James Warren) 58-63.  All citations to depositions are
to the deposition transcript page, not the page number assigned by the court's CM/ECF system.

4

blue lights.[8]   While waiting for Warren to pull over, Deputy Brown radioed for assistance.[9]  Defendant Huntsville police officer Samuel Lane responded to the call.[10]

Warren drove for a short distance after seeing Deputy Brown's blue lights, until he could safely pull off the roadway into a parking lot, where he stopped his automobile and rolled down his window.[11]  Deputy Brown parked his cruiser directly behind Warren's automobile, exited his vehicle, and approached Warren.[12]  Deputy Brown directed Warren to keep his hands on the steering wheel and face forward.[13]  Brown asked Warren why he was "in such a hurry," and what he had been doing that evening.[14]  Brown then directed Warren to exit his automobile, to place his hands on the rear of the vehicle, and to face the rear windshield.[15]  Officer Lane arrived at the scene at about that point in time.[16]

Deputy Brown walked back to, and sat in, his cruiser while Officer Lane began

---

[8] Warren Depo. 66-67; Brown Depo. 7-8.

[9] Brown Depo. 9; *see also* Brief in Opposition 6.

[10] Doc. no. 31, Ex. B (Deposition of Samuel Lane) 8-9; *see also* Brief in Opposition 7.

[11] Warren Depo. 67-71; Brown Depo. 8-10; *see also* Brief in Opposition 6.

[12] Warren Depo. 72; Brown Depo. 10; *see also* Brief in Opposition 6.

[13] Warren Depo. 72-73; *see also* Brief in Opposition 6.

[14] Warren Depo. 74-75; *see also* Brief in Opposition 6.

[15] Warren Depo. 73-77.

[16] Warren Depo. 77; *see also* Brief in Opposition 7.

to talk to, and then perform a "Terry" frisk on, Warren.[17]  Warren told Officer Lane that he had been stopped by Deputy Brown for speeding, and that Brown said he "was traveling fast."[18]

During Officer Lane's conduct of the "Terry" frisk a second Huntsville Police Officer, Anthony Sharp, arrived on the scene.[19]  Neither Officer Lane nor Officer Sharp spoke with Deputy Brown that night.[20]  Instead, at some point Officer Sharp walked to Deputy Brown's cruiser where he found Brown suffering a seizure.[21]  While Officer Sharp radioed for medical assistance, Officer Lane remained with Warren.[22]

Despite instructions to keep his hands on the rear of his automobile and face forward, Warren twice removed his hands from his auto and attempted to turn towards Officer Lane.[23]  Warren also repeatedly asked Officer Lane to state his (Lane's) name.[24]  Officer Lane then grabbed Warren's wrist, bent it, and pushed him

---

[17] Warren Depo. 77-81; Lane Depo. 12; Brown Depo. 13-14; doc. no. 31, Ex. C (Deposition of Officer Anthony Sharp) 6-7.  A "Terry" frisk is a pat-down of an individual's outer clothing to feel for weapons.  *See Terry v. Ohio*, 392 U.S. 1 (1968).

[18] Warren Depo. 83.

[19] Sharp Depo. 6.

[20] *See* Lane Depo. 5-20; Sharp Depo. 5-7; Brown Depo. 7-23; Warren Depo. 85.

[21] Warren Depo. 91; Sharp Depo. 7.

[22] Lane Depo. 18-19.

[23] Warren Depo. 85-86; Lane Depo. 17.

[24] Warren Depo. 85-86; Lane Depo. 17.

into the windshield of his vehicle, causing Warren to strike his head.[25]  Officer Lane also sprayed Warren in the face with oleoresin capsicum ("pepper spray"), and slid him off the back of the vehicle to the ground, as a result of which Warren's head struck the concrete surface of the parking lot with such force that he lost consciousness.[26]  Officers Sharp and Lane handcuffed Warren while he was unconscious.[27]  Warren regained consciousness while being carried to, and placed in the back of, one of the Huntsville police cruisers at the scene.[28]  Officer Lane charged Warren with resisting arrest and disorderly conduct, and transported him to jail.[29] Those charges were later withdrawn, however, when a municipal court judge granted the City prosecutor's motion to *nolle prosequi*.[30]

### III.  DISCUSSION

A.   **Plaintiff's 42 U.S.C. § 1983 Claims and Qualified Immunity**

42 U.S.C. § 1983 is a remedial statute.  It provides a means to seek redress

---

[25] Warren Depo. 92-94, 102, 123.

[26] *Id.* at 93-94, 102.

[27] *Id.* at 94-95.

[28] *Id.* at 94, 109.

[29] Lane Depo. 29; doc. no. 31, Ex. Q (Arrest Report); *see also* Brief in Opposition 8.

[30] Doc. no. 31, Ex. V. (Municipal Court File) 5, 10.  *Nolle prosequi* is defined as:  "A formal entry upon the record, by the plaintiff in a civil suit, or more commonly, by the prosecuting attorney in a criminal action, by which he declares that he 'will no further prosecute' the case, either as to some of the defendants, or altogether.  The voluntary withdrawal by the prosecuting attorney of present proceedings on a criminal charge."  *Black's Law Dictionary* 1048 (6th ed. 1990).

against state and local governmental entities and officials whose conduct under color of state law deprives a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961), *overruled on other grounds by Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The statute was enacted to enforce the Fourteenth Amendment. *See*, *e.g.*, *Mitchum v. Foster*, 407 U.S. 225 (1972).[31] In pertinent part, it provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

---

[31] The *Mitchum* Court observed that:

> Section 1983 was originally § 1 of the Civil Rights Act of 1871 . . . . It was "modeled" on § 2 of the Civil Rights Act of 1866, . . . and was enacted for the express purpose of "enforc[ing] the provisions of the Fourteenth Amendment." . . . The predecessor of § 1983 was thus an important part of the basic alteration in our federal system wrought in the Reconstruction era through federal legislation and constitutional amendment. As a result of the new structure of law that emerged in the post-Civil War era — and especially of the Fourteenth Amendment, which was its centerpiece — the role of the Federal Government as a guarantor of basic federal rights against state power was clearly established. . . . Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.

*Mitchum*, 407 U.S. at 238-39 (citations and footnotes omitted). Other cases providing insight into the history of § 1983 include *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 834 (1985); *Monroe*, 365 U.S. at 171.

equity, or other proper proceeding for redress, except that in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

A § 1983 claim has two essential elements:  a person whose actions were committed under color of state law, and which deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See*, *e.g.*, *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *partially overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Burch v. Appalachee Community Mental Health Servs.*, *Inc.*, 840 F.2d 797, 800 (11th Cir. 1988) (*en banc*), *aff'd sub nom. Zinermon v. Burch*, 494 U.S. 113 (1990).

The so-called doctrine of "qualified immunity" is a defense to a § 1983 claim, and provides "complete protection for governmental officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  As the Eleventh Circuit observed in *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002),

[t]he purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or

harassing litigation, *see Anderson v. Creighton*, 483 U.S. 635, 638, 107
S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987), protecting from suit "all but
the plainly incompetent or one who is knowingly violating the federal
law." *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001).

*Lee*, 284 F.3d at 1193-94; *see also*, *e.g.*, *Chesser v. Sparks*, 248 F.3d 1117, 1121-22

(11th Cir. 2001).

A valid qualified immunity defense has three parts.  The defendant must first

prove that he was acting within his "discretionary authority."  *Lee*, 284 F.3d at 1194.

If the defendant makes that showing, the burden then shifts to the plaintiff to show

that qualified immunity is not appropriate by demonstrating (*ii*) the deprivation of a

constitutional or federal statutory right (*iii*) that was clearly established when the

defendant acted.  *See Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009).[32]

While the determination of whether a federal constitutional or statutory right

was violated depends on the right asserted, a common standard is used to determine

whether a right was "clearly established."

> For a constitutional right to be clearly established, its contours "must be
> sufficiently clear that a reasonable official would understand that what
> he is doing violates that right.  This is not to say that an official action
> is protected by qualified immunity unless the very action in question has

---

[32] Courts were previously required under the Supreme Court's holding in *Saucier v. Katz*, 533
U.S. 194 (2001), to first determine whether "a constitutional right would have been violated on the
facts alleged," and then, if "the violation is established," determine "whether the right was clearly
established." *Saucier*, 533 U.S. at 200.  However, the Court overruled this portion of *Saucier* in
*Pearson v. Callan*, 555 U.S. 223 (2009), holding that "while the sequence set forth [in *Saucier*] is
often appropriate, it should no longer be regarded as mandatory."  *Pearson*, 555 U.S. at 236.

> previously been held unlawful, *see Mitchell* [*v. Forsyth*, 472 U.S. 511, 535 n.12, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  A right is "clearly established" for purposes of the doctrine of qualified immunity if an earlier court decision "gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* The only decisions that can give such warning are those "of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins by Hall v. Talladega City Board of Education*, 115 F.3d 821, 826 n.4 (11th Cir. 1997).  A right also will be deemed to have been "clearly established"

> when "the words of the pertinent federal statute or federal constitutional provision . . . [are] specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law.  This kind of case is one kind of 'obvious clarity' case." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted) (emphasis in original). Thus, "the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Id.* (emphasis added).

*Durruthy v. Pastor*, 351 F.3d 1080, 1092 (11th Cir. 2003) (bracketed alteration in original).

## 1.    Officer Lane's discretionary authority

The actions of a governmental official are deemed to have been committed

11

within his or her "discretionary authority" whenever the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Responding to a traffic stop, using force to effect an arrest, and making an arrest are all legitimate job-related functions within the discretionary authority of a municipal police officer. *See Brown v. City of Huntsville, Alabama*, 608 F.3d 724, 738 (11th Cir. 2010) ("A law enforcement officer receives qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive."); *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (holding that making an arrest is within the discretionary authority of a sheriff's deputy); *see also*, *e.g.*, *Forrester v. Stanley*, 394 Fed. Appx. 673, 675 (11th Cir. 2010) ("There is no dispute that as a police officer responding to a traffic stop [defendant] was acting in his discretionary capacity.").

Thus, the burden shifts to plaintiff to show, for both his unlawful arrest and excessive force claims, that Officer Lane's actions violated a clearly established federal constitutional or statutory right.

**2.   Unlawful arrest**

An arrest without a "probable cause" basis for believing that a crime had been

12

committed violates the Fourth Amendment's right to be free from unreasonable searches and seizures. *Durruthy*, 351 F.3d at 1088. "Probable cause to arrest exists 'where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.'" *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523 (11th Cir. 1984) (quoting *United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir. 1983)). Thus, to determine whether probable cause exists, courts must look to the specific elements of the underlying offense. *Crosby*, 394 F.3d at 1333 ("Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime.").

Qualified immunity shields an officer from an unlawful arrest claim so long as the officer had "arguable probable cause" to arrest. *See Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1558 (11th Cir. 1993). Arguable probable cause exists if "an officer reasonably could have believed that probable cause existed in light of the information the officer possessed." *Durruthy*, 351 F.3d at 1089.

Officer Lane arrested Warren for "disorderly conduct" and "resisting arrest."[33]

---

[33] *See* Arrest Report.

13

"Disorderly conduct" is a crime defined by an Alabama statute providing that:

> (a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
>> (1) Engages in fighting or in violent tumultuous or threatening behavior; or
>>
>> (2) Makes unreasonable noise; or
>>
>> (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
>>
>> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
>>
>> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
>>
>> (6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.
>
> (b) Disorderly conduct is a Class C misdemeanor.

Ala. Code § 13A-11-7 (1975). "Resisting arrest" is defined by an Alabama statute providing that:

> (a) A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting [sic] a lawful arrest of himself or of another person.
>
> (b) Resisting arrest is a Class B misdemeanor.

Ala. Code § 13A-10-41 (1975).

While Warren disobeyed Officer Lane's orders by attempting to look back at Lane and raising his hands off the trunk of his automobile, those actions are not sufficient to create arguable probable cause to arrest Warren for disorderly conduct.[34] Those actions were not the type of "threatening behavior" prohibited by § 13A-11-7(a)(1) of Alabama's disorderly conduct statute.  For "threatening behavior" to create criminal liability for disorderly conduct under that provision, the conduct must be engaged in "with intent to cause *public* inconvenience, annoyance, or alarm, or recklessly creating a risk thereof . . ." Ala. Code § 13A-11-7 (emphasis supplied); *see also Hardy v. State*, 455 So. 2d 265 (Ala. Cr. App. 1984) ("[Ala. Code § 13A-11-7] is 'designed to protect the public from being annoyed, inconvenienced, or alarmed.'") (quoting Ala. Code § 13A-11-7 Commentary).  An officer could not reasonably believe that an individual's act of turning to face the officer and making small movements with his hands manifested an intent to inconvenience, annoy, or alarm "the public."

Furthermore, the facts did not establish arguable probable cause to arrest for disorderly conduct under any of the other provisions of that statute.  *Viewing the facts in the light most favorable to the plaintiff*, there was no noise other than speaking, no abusive or obscene language or gestures, and no obstruction of vehicular or

---

[34] *See* Warren Depo. 77-92.

15

pedestrian traffic.

Officer Lane also did not have *arguable* probable cause to arrest Warren for resisting arrest. As an initial matter, the crime of resisting arrest requires that the underlying arrest be lawful. *See* Ala. Code § 13A-10-41(a). Thus, Officer Lane's probable cause to arrest Warren cannot rest on a resisting arrest charge alone. Officer Lane must have had probable cause to arrest Warren for a separate crime before he could have probable cause to arrest Warren for resisting arrest. Furthermore, when Warren turned to look at Officer Lane and raised his hand, Officer Lane had yet to begin to arrest Warren.[35] Thus, these actions cannot constitute resisting arrest. Once Officer Lane began to arrest Warren, he submitted. Also, Warren's actions of raising his hands off the trunk of his car and turning to look at Officer Lane did not prevent, and were not attempts to prevent, Officer Lane from taking any action.[36] *See* Ala. Code § 13A-10-41 (1975) (defining resisting arrest as preventing or attempting to prevent an officer from effecting an arrest).

Defendants also argue that Officer Lane had arguable probable cause to arrest Warren for reckless driving.[37] "Reckless driving" is defined by Alabama law as driving "carelessly and heedlessly in willful or wanton disregard for the rights or

---

[35] *See* Warren Depo. 77-92.

[36] *See* Warren Depo. 77-92.

[37] *See* Brief in Support 10-14.

16

safety of persons or property, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property."  Ala. Code § 32-5A-190 (1975).  Viewing the facts in the light most favorable to the plaintiff, Warren did not drive in a manner that could even arguably be construed as reckless driving.  Furthermore, only Deputy Brown observed Warren driving.[38]  However, it was Officer Lane and not Deputy Brown who arrested Warren.

Finally, defendants argue that Officer Lane had arguable probable cause to arrest Warren for speeding.  The Alabama Code makes it a misdemeanor to drive in excess of the "maximum lawful speeds," or "at a speed that is greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards existing."  Ala. Code §§ 32-5A-8, 32-5A-170, 32-5A-171 (1975).

Contrary to defendants' assertions, however, Warren did not admit speeding to Officer Lane.  He only admitted that he was stopped by Deputy Brown for speeding.[39]  Specifically, Warren told Officer Lane that he "was pulled over and [Deputy Brown] said I was traveling fast"; he also testified that "I think I mentioned something about me speeding [to Officer Lane]."[40]

---

[38] Brown Depo. 8; Witness Statement of Brown 1.

[39] Brief in Support 4 ¶21 ("Warren stated that he had been pulled over for speeding."); Brief in Opposition 7 ("15-21.  Admitted.").

[40] Warren Depo. 83.  While Warren's statement that he "mentioned something about me speeding" could indicate that he stated to Officer Lane that he had been speeding, the court infers that he only stated that Deputy Brown stopped him for speeding, because the court must draw all

Even if *Deputy Brown* observed Warren speeding, *Officer Lane* cannot assert Brown's knowledge as a basis for arguable probable cause to arrest Warren for speeding.  The "collective knowledge doctrine" allows a court to consider the collective knowledge of law enforcement officers — *i.e.*, an aggregation of the knowledge of all law enforcement officers involved — to determine if probable cause existed.  *See United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985).  However, the collective knowledge doctrine only applies when there is "at least a minimal level of communication" among the officers.  *Id.*  Here, *there was no communication between Officer Lane and Deputy Brown*, much less a communication concerning speeding.

In light of the foregoing analysis, Officer Lane did not have arguable probable cause to arrest Warren and, thus, the analysis now shifts to whether the violated right was clearly established.

"Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment."  *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003).  An officer has reasonable warning that an arrest without probable cause violates the Fourth Amendment.

In conclusion, the facts in this record, interpreted in the light most favorable

---

reasonable inferences in plaintiff's favor.

to plaintiff, sufficiently allege a violation of his clearly established Fourth Amendment right to be free from warrantless seizures.  Thus, defendants' motions for summary judgment are due to be denied on plaintiff's unlawful arrest claim.

### 3. Excessive force

Warren also claims that Officer Lane used excessive force when effecting his arrest.[41]  When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be 'secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting U.S. Const., amend. IV (1791)).  While a right to use some force is implicit in a police officer's authority to conduct investigatory stops and make arrests, use of an unreasonable amount of force violates the Fourth Amendment and, thus, provides cause for an action under § 1983.  *See id.* at 393-98.

"Whether a specific use of force is excessive turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the

---

[41] Plaintiff's claim that Officer Lane's use of *any* force was excessive because Officer Lane did not have probable cause to arrest him is subsumed into the unlawful arrest claim.  *See Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) ("[A] claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.").

suspect is resisting or fleeing." *Post*, 7 F.3d at 1559.  The reasonableness of an officer's use of force is "judged from the perspective of a reasonable officer on the scene," and in consideration of "the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396.

The defense of qualified immunity protects law enforcement officers "for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." *Brown*, 608 F.3d at 738.

Several factors weigh in favor of only a low level of force in the circumstances of this case.  All of the crimes asserted by defendants as possible bases for Warren's arrest — disorderly conduct, resisting arrest, reckless driving, and speeding — are relatively minor crimes.  Also, Warren did not resist arrest or attempt to flee.

Weighing in favor of use of a greater level of force is the alleged, potential threat Warren posed.  He was unsecured, and he failed to follow Officer Lane's orders by turning towards Officer Lane and twice raising his hands.  Even so, and mindful of the dangers police officers face and the "tense, uncertain, and rapidly evolving" circumstances in which they must act, this court can only find that Warren was not sufficiently threatening to permit an objectively reasonable officer in the same

20

circumstances to believe that the level of force Officer Lane employed was not excessive.   Officer Lane bent Warren's wrist, sprayed him with pepper spray, slammed him against Warren's vehicle, causing his head to strike the vehicle, and knocking Warren to the ground where his head struck the concrete with such force that he was rendered unconscious.[42]   Officer Lane could have neutralized any potential threat with far less force.

Furthermore, the cases defendants cite do not support the *level* of force Officer Lane used in the *particular* circumstances of this case.   To the contrary, the case law indicates that Officer Lane's use of force exceeded the scope of qualified immunity on excessive force claims.   While forcing an arrestee to the ground, using handcuffs, and throwing an arrestee against a vehicle have all been found to be acceptable uses of force on unrestrained subjects, Officer Lane's use of force in this case is significantly greater than those. *See Durruthy*, 351 F.3d at 1093-95 (finding the force used to be permissible where an officer forced the plaintiff to the ground and used handcuffs when making an arrest); *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) (finding the force used to be permissible where an officer arresting the plaintiff grabbed him "from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van,

---

[42] Warren Depo. 85-102.

searched his groin area in an uncomfortable manner, and handcuffed him"); *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (finding the force used to be permissible where an officer questioning the plaintiff "slammed [the plaintiff] against the wall, kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants"); *Post*, 7 F.3d at 1556, 1559-60 (finding the force used to be permissible where an officer effecting an arrest "spun [the plaintiff] around, placed him against a display case, applied a choke hold, and handcuffed him").  Unlike those cases, Officer Lane knocked Warren to the ground, caused his head to twice strike hard surfaces, and sprayed him with pepper spray.[43]  The level of force used was so great that Warren suffered a concussion.[44]

While the *Post* decision indicates that an arrestee raising his hands may be reasonably perceived as threatening and, thereby, justify the use of some amount of force, that holding does not apply to these facts.  *See Post*, 7 F.3d at 1556 ("When [the plaintiff] raised his hands, a reasonable officer in [the defendant officer's] place could have concluded that the technique [the defendant] used was needed to stop [the plaintiff] from becoming violent.").  Both the circumstances in which force was used and the level of force employed in *Post* are distinguishable from this case.  In *Post*,

---

[43] *Id.*

[44] *Id.*

the arrestee "put his hands up." *Id.* Here, Warren only slightly raised one hand off the vehicle, which is much less threatening than an arrestee who raises both hands into the air.

Additionally, the officer in *Post* "spun [the plaintiff] around, placed him against a display case, applied a choke hold, and handcuffed him." *Id.* That level of force was significantly less than Officer Lane's act of spraying Warren with pepper spray and then causing him to twice strike his head against hard surfaces with sufficient force to cause loss of consciousness. [45]

Also, Officer Lane's use of pepper spray in addition to the other force employed, distinguishes this case from cases finding qualified immunity on excessive force claims.[46]

> Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else. Courts have consistently concluded that using pepper spray is reasonable, however, where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital.

*Vinyard*, 311 F.3d at 1348. In *Brown v. City of Huntsville, Alabama*, 608 F.3d 724 (11th Cir. 2010), the Eleventh Circuit was confronted with facts remarkably similar

---

[45] *Id.*

[46] *Id.* at 93-94.

to the facts of this case, and found the use of pepper spray, in addition to other force, precluded qualified immunity. *See id.* at 739. In that case the plaintiff was arrested for disorderly conduct. *Id.* Despite being cooperative when told to exit her vehicle, the defendant officer pushed the plaintiff back into her car, sprayed her with pepper spray, then pulled her from the car and threw her to the ground. *Id.* In deciding whether qualified immunity applied, the court found that: "Each *Graham* factor supports [the plaintiff]. First, [she] was not arrested for a serious crime. Second, [she] did not pose a threat to anyone's safety. Third, under [her] account of the facts, she was cooperative, was not resisting arrest, and was not attempting to flee." *Id.*

In like manner, the crimes for which Warren was arrested were minor infractions, Warren was not acting violently, and there was no threat to Officer Lane. Thus, a reasonable officer could not believe that Officer Lane's use of pepper spray was reasonable in these circumstances, especially when used *in addition to* other force.

Shifting to the clearly established element, the law was clearly established that Officer Lane's use of pepper spray and other force against Warren in these circumstances violated the Constitution. As discussed, the facts of *Brown v. City of Huntsville, Alabama* were materially similar to the case before this court. That case, in addition to others, gave Officer Lane reasonable warning that his conduct violated

a constitutional right.  *See id.* at 740 ("[T]he law was clearly established in 2005 that [the defendant's] combined gratuitous use of pepper spray and other force against [the plaintiff] in this minor offense context violated the Constitution."); *Vinyard*, 311 F.3d at 1347-49; *Lee*, 284 F.3d at 1198-1200.

In summary, Officer Lane's use of force was grossly disproportionate in relation to the threat presented by Warren and, thus, violated a clearly established constitutional right.  Consequently, Officer Lane is not entitled to qualified immunity, and summary judgment is due to be denied on Warren's excessive force claim.

## B.    Plaintiff's State Law Claims

Plaintiff also filed state law claims against Officer Lane and the City of Huntsville for false imprisonment and assault and battery, and against Officer Lane alone for malicious prosecution.[47]   Officer Lane asserts "discretionary-function immunity" as a defense to Warren's state law claims.[48]

### 1.    Discretionary-function immunity

Alabama law provides that municipal police officers are entitled to immunity from tort liability under the following circumstances:

> Every peace officer, except constables, who is employed or
> appointed pursuant to the Constitution or statutes of this state, whether

---

[47] Complaint 10-12.

[48] Brief in Support 24-28.

appointed or employed as such peace officer by the state or a county or municipality thereof, . . . and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, *and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties*.

Ala. Code § 6-5-338(a) (1975) (emphasis supplied).  The Alabama Supreme Court

restated the rule governing discretionary-function immunity in a plurality decision in

*Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000):

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> . . .
>
> (4) exercising judgment in the enforcement of criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

*Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (emphasis in original).  The plurality

opinion in *Cranman* was subsequently modified in *Hollis v. City of Brighton*, 950 So.

2d 300, 309 (Ala. 2006), to extend immunity to

> (4) exercising judgment in the enforcement of criminal laws of the State, including, but not limited to, law-enforcement

26

> officers' arresting or attempting to arrest persons, *or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975.*

*Hollis*, 950 So. 2d at 309 (quoting *Cranman*, 792 So. 2d at 405) (emphasis in original to emphasize language added to the *Cranman* restatement).[49]

Discretionary-function immunity applies when the defendant claiming such immunity satisfies three elements of proof: (i) the defendant demonstrates that he or she was a peace officer on the date of the incident in question, and that he or she was (ii) performing law enforcement duties, and (iii) exercising judgment or discretion when doing so. *See Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003).

A burden-shifting analysis is employed when determining whether discretionary-function immunity applies. *See id.* at 205. The defendant bears the burden of showing that the plaintiff's "claims arise from a function that would entitle [the defendant] to immunity." *Id.*; *see also Walker v. City of Huntsville*, 62 So. 3d 474, 496-98 (Ala. 2010). "The burden then shifts to the plaintiff to show that one of

---

[49] While the *Cranman* court articulated its restatement as the test for State-agent, discretionary-function immunity, the Alabama Supreme Court later held that the *Cranman* test also applies for determining whether a municipal officer is entitled to discretionary-function immunity under Ala. Code § 6-5-338(a). *See Howard v. City of Atmore*, 887 So. 2d 201, 203 (Ala. 2003) ("Thus, we will address the applicability of peace-officer immunity under the principles set forth in *Cranman*."); *see also Hollis*, 885 So .2d at 143 ("Whether a qualified peace officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated by *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), and adopted by a majority of this Court in *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000), and *Ex parte Rizk*, 791 So. 2d 911 (Ala. 2000).").

the two categories of exceptions . . . recognized in *Cranman* is applicable." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008).   The two exceptions to immunity recognized in *Cranman* were stated as follows:

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity[:] [sic]
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the state agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Cranman*, 792 So. 2d at 405 (emphasis in original, bracketed alterations added).

The first element for the application of discretionary-function immunity in this case — that the defendant be a "peace officer" — is not disputed.[50]  *See Borders v. City of Huntsville*, 875 So. 2d 1168, 1178 (Ala. 2003) ("As a police officer, [the defendant] qualifies as a peace officer for purposes of [discretionary-function

---

[50] *See*, *e.g.*, Complaint ¶ 8 ("Defendant Samuel Lane is an officer with the Huntsville Police Department."); doc. no. 5 (Answer of Samuel Lane) ¶ 8-9 ("In response to the allegations contained in paragraphs 8 and 9 of the complaint, Officer Lane specifically admits that at all times relevant to this case he was employed by the City of Huntsville, Alabama ('COH'), as a police officer for the Huntsville Police Department ('HPD')."); doc. no. 6 (Answer of the City of Huntsville) ¶ 8-9 ("In response to the allegations contained in paragraphs 8 and 9 of the complaint, the [City] specifically admits that at all times relevant to this case Officer Samuel Lane was its employee, working as a police officer for the Huntsville Police Department ('HPD').")

28

immunity]."); *Howard*, 887 So. 2d at 204 ("It is undisputed that Officer Byars[, a police officer,] was a law enforcement officer at the [relevant time] . . . .  The first element is, therefore, satisfied.").

The second element is also satisfied, because Officer Lane was performing law enforcement duties while participating in the traffic stop and subsequent arrest of Warren.  *See Cranman*, 792 So. 2d at 405 (including within those actions for which officers have immunity "officers' arresting or attempting to arrest persons"); *House v. State*, 380 So. 2d 940, 941 (Ala. 1979) (holding that for immunity purposes law enforcement duties include the "detection and apprehension of criminals").

Shifting to the third element, making an arrest and the use of force when making an arrest are normally discretionary functions.  *See* Ala. Code § 13A-3-27 ("A peace officer is justified in using that degree of physical force which he believes to be necessary . . ."); *Borders*, 875 So. 2d at 1178 ("Generally, arrests and attempted arrests are classified as discretionary functions.") (citing *Telfare v. City of Huntsville*, 841 So. 2d 1222 (Ala. 2002)); *City of Birmingham v. Sutherland*, 834 So. 2d 755, 762 (Ala. 2002) ("Thus, [the defendant officer] was performing a discretionary function when he chose to make a warrantless arrest and a discretionary function when he chose the manner in which he would effect the arrest.").

Warren argues that Officer Lane is not entitled to discretionary-function

immunity because the arrest was for misdemeanors not committed in the presence of

Officer Lane.[51]  "Generally, Alabama's Rules of Criminal Procedure and [Ala. Code

§ 15-10-3(a)] do not allow law-enforcement officers the discretion to arrest alleged

wrongdoers for misdemeanors not committed in the presence of the arresting officer."

*Telfare*, 841 So. 2d at 1229 (citing Ala. Code § 15-10-3 (1975); Ala. R. Crim. P. 4.1).

Thus, an arrest for a misdemeanor that was not committed in the presence of the

arresting officer is not an act entitled to discretionary-function immunity.  *See id*.

Officer Lane arrested Warren for the misdemeanors of disorderly conduct and

resisting arrest, which he asserts Warren committed in his presence.[52]  However,

Warren presents evidence that he did not commit those crimes.[53]  When, as here, the

commission of misdemeanors in the arresting officer's presence is a disputed issue

of material fact, the officer only must have arguable probable cause to arrest for

discretionary-function immunity to apply.  *See Borders*, 875 So. 2d at 1180.  This is

the same arguable probable cause standard applied to determine the applicability of

qualified immunity for § 1983 claims, *see id.*, and the court's § 1983 analysis above

found that Officer Lane did not have arguable probable cause to arrest.  (*See* Part

III(2) of this opinion, *supra*.)  Thus, Officer Lane is not entitled to discretionary-

---

[51] Brief in Opposition 35.

[52] Lane Depo. 21-30; Arrest Report 1-2.

[53] *See* Warren Depo. 77-125.

function immunity on plaintiff's state law claims.

### 2.    The City's liability

The City asserts discretionary-function immunity as a defense to Warren's state

law claims.  However, because Officer Lane is not entitled to discretionary-function

immunity, the City of Huntsville, as his employer, is also not entitled to claim the

protection of such immunity.  *See Ex parte City of Gadsden*, 781 So. 2d 936, 940

(Ala. 2000).

The City also asserts Ala. Code § 11-47-190 as a defense to Warren's state law

claims.  That statute "limits the liability of municipalities to injuries suffered through

neglect, carelessness, or unskillfulness of an agent, officer, or employee."  *Couch v.*

*City of Sheffield*, 708 So. 2d 144, 154 (Ala. 1998).  The statute thus "absolves a

municipality from liability for the intentional torts of its agents."  *Altmayer v. City of*

*Daphne*, 613 So. 2d 366, 369 (Ala. 1993).  However, the statute does not provide a

municipality with immunity for claims of assault and battery or false imprisonment

when a plaintiff alleges facts demonstrating "neglect, carelessness, or unskillfulness."

*See Borders v. City of Huntsville*, 670 So. 2d 1168, 1183 (Ala. 2003); *Franklin v. City*

*of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995).

In this case, Warren alleges that, to the extent that his assault and battery and

false imprisonment counts occurred due to the negligent conduct of Officer Lane, the

City is liable through a theory of *respondeat superior*.[54]  In addition, Warren submits sufficient evidence of Officer Lane's carelessness or unskillfulness to defeat the City's motion for summary judgment on the basis of Alabama Code § 11-47-190.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment will be denied on all claims.  An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 28th day of December, 2011.

_____
United States District Judge

---

[54] Complaint 10-11.

32